NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHYLLIS JOHNSON, | |
| Plaintiff, | Civil Action No.: 11-6737 (ES) |
| v. | OPINION |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**SALAS, District Judge**

Before the Court is an appeal filed by Phyllis Johnson ("Claimant" or "Ms. Johnson") seeking review of an Administrative Law Judge's ("ALJ") decision denying her application for disability insurance benefits under Title II of the Social Security Act. (D.E. No. 1). The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court vacates the Commissioner's decision and remands for further administrative proceedings consistent with this Opinion.

**I.     Background**

Ms. Johnson slipped and fell in January 1984. (R. at 23, 377).[1] During the relevant time period detailed below, she suffered from pain and weakness with her wrists purportedly as a result of her fall. (R. at 22, 23). Ms. Johnson claims that this caused her gripping difficulties. (*Id.*). Her wrist problem was characterized as "Madelung's deformity of both of wrists." (R. at

---
[1] The Court uses the initial "R." to refer to the Administrative Record.

1

22). Ms. Johnson was also determined to suffer from "degenerative disc disease of the lumbar spine." (*Id.*). This allegedly caused Ms. Johnson to experience, *inter alia*, back pain. (R. at 23).

On August 31, 1984, Ms. Johnson filed an application for disability insurance benefits. (R. at 322-25). Ms. Johnson's application was initially denied on November 19, 1984, (R. at 320-21), and upon reconsideration on March 4, 1985, (R. at 316-18).[2] Thereafter, Ms. Johnson requested a hearing before an ALJ. (R. at 294). On June 26, 1985, following a hearing earlier that month, ALJ Irving Fliegler issued a decision finding that Ms. Johnson was not entitled to a period of disability or disability insurance benefits. (R. at 245-50).

On November 26, 1985, Ms. Johnson filed a second application for disability insurance benefits. (R. at 240-43). Ms. Johnson's second application was initially denied on February 20, 1986, (R. at 239), and again upon reconsideration on September 9, 1986, (R. at 236). On February 1, 1994, Ms. Johnson then filed a third application for disability insurance benefits. (R. at 206-08). On February 18, 1994, this third application was denied. (R. at 203-205).

On July 13, 1994, Ms. Johnson filed a fourth application for disability insurance benefits. (R. at 181-84). Ms. Johnson's fourth application was initially denied on January 28, 1995, (R. at 175-79), and again upon reconsideration on April 27, 1995, (R. at 172). On May 30, 1995, Ms. Johnson subsequently requested a hearing before an ALJ. (R. at 171). After a hearing in March 1996, on April 13, 1996, ALJ De Steno issued a decision finding that Ms. Johnson was not entitled to a period of disability or to disability insurance benefits. (R. at 130-139).

Notably, in his decision, ALJ De Steno determined that the February 18, 1994 denial "was not appealed and thus constitutes a 'final determination' of the agency." (R. at 135). ALJ

---

[2] Although the index to the Administrative Record provides that Ms. Johnson's application was denied upon reconsideration on March 4, 1985, (R. at 5), the actual document is difficult to read and may reference a February 20, 1985 date, (R. at 316-317). Nevertheless, the parties do not address these differences, and the Court's disposition does not depend on any such discrepancy.

2

De Steno then concluded that he could find "no valid reason for re-opening the [February 1, 1994] claim" and therefore that "the portion of the instant claim alleging disability on or before February 18, 1994, is dismissed." (*Id.*). ALJ De Steno accordingly determined that Ms. Johnson's July 13, 1994 application must be denied for administrative res judicata. (*See* R. at 118 (Appeals Council interpreting ALJ De Steno's denial of July 13, 1994 application based on res judicata)).

On May 9, 1996, Ms. Johnson then requested that the Appeals Council review ALJ De Steno's decision, (R. at 127-29), but, on January 2, 1998, the Appeals Council found "no basis . . . for granting [her] request for review," (R. at 122-123). On March 6, 1998, Ms. Johnson then filed a complaint in the U.S. District Court for the District of New Jersey against the Commissioner of Social Security,[3] and, on January 13, 1999, the District Court remanded Ms. Johnson's claim pursuant to a consent order by the parties. (R. at 120-21).

On May 21, 1999, the Appeals Council accordingly issued an order vacating the Commissioner's final decision and remanded the matter back to the ALJ. (R. at 118). Notably, the Appeals Council also determined that the February 18, 1994 denial of Ms. Johnson's February 1, 1994 application was "not a medical denial." (*Id.*). The Appeals Council therefore concluded that "res judicata does not apply" and it ordered the ALJ to "consider the merits of the application filed on July 13, 1994," which ALJ De Steno's April 13, 1996 decision had failed to do. (*Id.*).

On September 23, 1999, ALJ Richard Still[4] conducted a post-remand hearing pursuant to the Appeal Council's May 21, 1999 order. (R. at 76, 326-65). On March 31, 2000, ALJ De

---

[3] (*See* Civil Action 98-1005, D.E. No. 1).
[4] The transcript provides that ALJ Still conducted the post-remand hearing, but ALJ De Steno later asserts that he conducted the post-remand hearing. (R. at 76). The Commissioner of Social Security likewise alleges that ALJ De

Steno then issued a decision finding that Ms. Johnson was not entitled to a period of disability or disability insurance benefits. (R. at 73-83). In this decision, ALJ De Steno explained that—before the February 18, 1994 denial which was ultimately determined to be a non-medical denial by the Appeals Council—the most recent "final determination of the agency on the basis of disability was a reconsideration determination made on September 9, 1986, based on a claim filed on November 26, 1985." (R. at 77). Since Ms. Johnson's next application was not filed until February 1, 1994, more than four years after this September 9, 1986 determination, ALJ De Steno determined that Ms. Johnson's November 26, 1985 application "cannot be reopened." (*Id.*). Accordingly, ALJ De Steno determined that the "period on and prior to the reconsideration determination of September 9, 1986, is barred from consideration based on the doctrine of res judicata" and therefore that "the period in issue for establishing disability is from September 10, 1986 through the date last insured, June 30, 1989." (*Id.*). ALJ De Steno concluded that Ms. Johnson "was not under a disability . . . for the period in issue" and therefore "not entitled to a period of disability and disability insurance benefits based on her July 13, 1994 Title II application." (*Id.*).

On April 28, 2000, Ms. Johnson again requested that the Appeals Council review ALJ De Steno's decision. (R. at 70-72). Nearly ten years later, on January 22, 2010, the Appeals Council remanded Ms. Johnson's application to an ALJ. (R. at 62-66). The Appeals Council explained that "the record upon which the [ALJ] based the decision could not be located" and that it was "unable to locate or redevelop all of the evidence in this case." (R. at 64). The Appeals Council accordingly determined that Ms. Johnson "should have the opportunity for a new hearing and decision on the issues raised by her application filed on July 13, 1994." (*Id.*).

---

Steno conducted the post-remand hearing. (D.E. No. 4, Answer, ¶ 4). The parties do not address this discrepancy and it is not relevant to the Court's disposition.

The Appeals Council remanded the case to a different ALJ than ALJ De Steno and "regret[ted] the delay involved." (*Id.*).

On January 28, 2011, ALJ Michelle Cavadi subsequently held a hearing concerning the issues raised by Ms. Johnson's July 13, 1994 application. (R. at 19, 366-401). On May 20, 2011, ALJ Cavadi issued a decision finding that Ms. Johnson was not disabled from September 10, 1986 through June 30, 1989 and not entitled to disability insurance benefits. (R. at 16-26). ALJ Cavadi determined that "the unadjudicated period begins on September 10, 1986, the day after the reconsideration determination" through "June 30, 1989 . . . the date last insured." (R. at 19, 20, 22). ALJ Cavadi then concluded that Ms. Johnson "was not under a disability, as defined in the Social Security Act, at any time from September 10, 1986, the alleged onset date, through June 30, 1989, the date last insured." (R. at 26).

On July 22, 2011, Ms. Johnson requested that the Appeals Council review ALJ Cavadi's decision, (R. at 12), but, on September 29, 2011, the Council determined that it had "no reason under [its] rules to assume jurisdiction" and that ALJ Cavadi's decision constituted a "final decision of the Commissioner of Social Security," (R. at 7-8). On November 15, 2011, Ms. Johnson subsequently filed a complaint with this Court, appealing the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). (D.E. No. 1). The Court received the administrative record on February 23, 2012, (D.E. dated February 23, 2012), and the parties subsequently briefed the issues raised by Ms. Johnson's appeal, (D.E. No 7, Brief in Support of Claimant ("Cl. Br."); D.E. No. 8, Brief in Support of Defendant ("Def. Br.")).

## II. Legal Standard

### A. Benefits

To qualify for disability insurance benefits under Title II of the Social Security Act, the claimant must establish that she meets certain requirements under 42 U.S.C. § 423. Namely, for purposes of such benefits, the term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Moreover, a claimant is disabled in this respect only if her "physical or mental impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520(a)(4). Finally, disability insurance benefits may not be paid unless the claimant meets the statutory insured status requirements. 42 U.S.C. § 423(a)(1)(A); *see also id.* § 423(c)(1) (setting the statutory requirements for determining whether a claimant is insured for disability insurance benefits).

### B.     Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she suffers from a severe impairment, then the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If she is able to make this showing then she is presumed disabled. If she cannot show that she meets or exceeds a listed impairment, then at step four she must show that her residual functional capacity does not permit her to return to her previous work. 20 C.F.R. § 404.1520(e). If the claimant meets this burden, then at step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful

work.  20 C.F.R. § 404.1520(g).  If the Commissioner cannot meet this burden then the claimant shall receive disability benefits.

### C. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g) & 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Although substantial evidence requires more than a mere scintilla, "it need not rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

In reviewing an ALJ's decision, the Court must look to the ALJ's "expression of the evidence s/he considered which supports the result," as well as the reasoning behind the rejection of certain evidence to determine if substantial evidence supports the findings.  *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  An ALJ's reasoning for weighing or rejecting evidence is particularly important when there is "conflicting probative evidence in the record." *Id.* at 706.  The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

**III.     ALJ Cavadi's Decision**

As a preliminary matter, ALJ Cavadi determined that "the unadjudicated period begins on September 10, 1986, the day after the reconsideration determination" and that the Claimant "last met the insured status requirements of the Social Security Act on June 30, 1989." (R. at 19, 22). Accordingly, ALJ Cavadi ruled that the Claimant must establish disability "on or before" June 30, 1989 "in order to be entitled to a period of disability and disability insurance benefits." (*Id.* at 20).

At step one, ALJ Cavadi determined that the Claimant "did not engage in substantial gainful activity during the period from September 10, 1986 through her date last insured of June 30, 1989." (R. at 22).

At step two, ALJ Cavadi determined that "the [C]laimant had the following severe impairments: Madelung's deformity of both wrists and degenerative disc disease of the lumbar spine." (*Id.*). ALJ Cavadi explained that these impairments "are severe because they result in greater than minimal limitations in the [C]laimant's ability to perform basic work activities." (*Id.*).

At step three, ALJ Cavadi determined that "the [C]laimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*). ALJ Cavadi noted that the Claimant's impairments do not equal in severity the impairments provided in "Listings 1.02 and 1.04." (*Id.*). ALJ Cavadi explained that the Claimant's "degenerative disc disease had not been characterized by evidence of nerve root compression; spinal arachnoiditis; or lumbar spinal stenosis, as required by Section 1.04 of the Listings." (*Id.*).

9

At step four, ALJ Cavadi determined that the "[C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with postural and manipulative limitations." (*Id.*). She determined that "the [C]laimant was capable of performing past relevant work as a customer service clerk, loan processor, and medical charts analyst" and that this "work did not require the performance of work-related activities precluded by the [C]laimant's residual functional capacity." (R. at 26). Accordingly, ALJ Cavadi ruled that the "[C]laimant was not under a disability . . . at any time from September 10, 1986 . . . through June 30, 1989, the date last insured." (*Id.*).

## IV.  Discussion

### A.  Ms. Johnson's Arguments on Appeal

On appeal, Ms. Johnson argues that substantial evidence exists in the administrative record to support a finding that she is entitled to disability insurance benefits. (Cl. Br. at 12). First, Ms. Johnson argues that ALJ Cavadi's step three analysis is improper because (1) ALJ Cavadi failed to set forth the reasons why Ms. Johnson's wrist impairment does not meet Listing 1.02 in 20 C.F.R. Part 404, Subpart P, Appendix 1, (Cl. Br. at 22); and (2) ALJ Cavadi failed to provide an analysis of whether a combination of Ms. Johnson's impairments medically equals any Listing from Appendix 1, (*id.* at 23-24). Thus, in sum, Ms. Johnson asserts that ALJ Cavadi "refused to compare [her] severe wrist impairments to any of the Commissioner's listings at step three [and] refused to combine these wrist impairments with [her] severe lumbar disc disease to determine medical equivalence at step three . . . ." (*Id.* at 18).[5] Ms. Johnson therefore asserts that this matter "must be remanded for a proper step three analysis." (*Id.* at 24).

---

[5] Ms. Johnson briefly references ALJ Cavadi's determination that Ms. Johnson's "degenerative disc disease of the lumbar spine" does not match Listing 1.04. (Cl. Br. at 22). She observes that ALJ Cavadi had noted the symptoms that Ms. Johnson lacks—i.e., "nerve root depression [sic], spinal arach[n]oiditis and spinal stenosis." (*Id.*). Ms. Johnson then only reiterates the symptoms she *does* have relating to her spine; she does not actually argue that, in

Second, Ms. Johnson argues that, at step four, ALJ Cavadi failed to articulate a nexus between Ms. Johnson's condition and the residual functional capacity assessment. (Cl. Br. at 28). Said differently, Ms. Johnson argues that ALJ Cavadi determined a residual functional capacity without explaining "how the evidence compels or even suggests th[at] finding[]." (*Id.*). Ms. Johnson also argues that ALJ Cavadi improperly posed a hypothetical question to a vocational expert. (*Id.* at 30). Finally, Ms. Johnson asserts that, in view of her "bilateral deformities in both hands and wrists," ALJ Cavadi's finding that Ms. Johnson "could go back to work typing and filing all day" is illogical. (*Id.* at 31).[6]

Therefore, Ms. Johnson asks this Court to reverse the Commissioner's final decision and order that Ms. Johnson be paid disability insurance benefits. (*Id.* at 12). Alternatively, Ms. Johnson asks the Court to remand the ALJ's decision and order a new hearing. (*Id.*). Notably, Ms. Johnson does not, however, challenge ALJ Cavadi's determination that the "unadjudicated period begins on September 10, 1986" and continues until Ms. Johnson "last met the insured status requirements of the Social Security Act on June 30, 1989." (R. at 19, 22; *see generally* Cl. Br.).

As detailed below, the Court finds that ALJ Cavadi erred in her step three analysis and this matter will therefore be remanded for further administrative proceedings. Since ALJ Cavadi's step three analysis could obviate the need to evaluate Ms. Johnson's impairments in step four, the Court will not consider issues concerning step four at this time. *See Jones v. Astrue*, No. 11-4379, 2012 WL 5451528, at *6 (D.N.J. Nov. 5, 2012) ("Because the ALJ's

---

view of these other symptoms, Listing 1.04 is satisfied. (*See id.*). Accordingly, the Court finds that Ms. Johnson does not actually assert an argument on appeal concerning ALJ Cavadi's step three determination relating to her degenerative disc disease.

[6] Ms. Johnson also seems to challenge ALJ Cavadi's determination that, notwithstanding her Madelung's deformity of both wrists, Ms. Johnson is "limited to frequent handling and fingering." (Cl. Br. at 28-29). Referring to ALJ Cavadi's finding that Ms. Johnson had the residual functional capacity to perform light work with "manipulative limitations," Ms. Johnson then declares: "Where in the world are the manipulative limitations?" The Court is unable to decipher Ms. Johnson's objection with ALJ Cavadi's determination in this respect.

reassessment at Step Three could affect and/or obviate the need to evaluate Plaintiff's impairments at Steps Four and Five, the Court declines to address issues concerning Steps Four and Five at this time."); *Butler v. Astrue*, No. 09-3252, 2010 WL 3908627, at \*4 (D.N.J. Sept. 28, 2010) ("Because the Step Three analysis is sequential, and a reconsideration of Step Three may obviate or otherwise affect the final two steps, the Court will not consider Plaintiff's other arguments.").

### B.  Analysis

At step three, the ALJ must consider the medical severity of the claimant's impairment(s) and whether the impairment(s) "*meets or equals* one of [the] listings in Appendix 1" of 20 C.F.R. Part 404, Subpart P.  20 C.F.R. § 404.1520(a)(4)(iii) (emphasis added).  This listing of impairments in Appendix 1 "describes[,] for each of the major body systems[,] impairments that [are] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  *Id.* § 404.1525(a).

The ALJ can find medical equivalence in three ways:

> (1)(i) If you have an impairment that is described in appendix 1, but--
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
>
> (2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s)

> are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
>
> (3) If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(b).

The ALJ must "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 126 (3d Cir. 2000). Moreover, "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 120 n.2 (internal quotations omitted). Accordingly, the ALJ must "set forth the reasons for his decision." *Id.* at 119.

Indeed, "an explanation from the ALJ [indicating] the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07; *see also Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008) ("There is no way to review the ALJ's decision . . . [where] no reasons were given for [the ALJ's] conclusion that [the claimant's] impairments in combination did not meet or equal an Appendix 1 listing.").

Here, in step two, ALJ Cavadi determined that Ms. Johnson suffered from two "severe impairments": "Madelung's deformity of both wrists" and "degenerative disc disease of the lumbar spine." (R. at 22). Thereafter, ALJ Cavadi made the following determination for step three:

> Through the date last insured, the [C]laimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart

> P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). A review of the medical evidence indicates that none of the [C]laimant's impairments meet or are equal in severity to any of the impairments listed in appendix 1 to Subpart P of 20 CFR 404, in particular Listings 1.02 and 1.04. The [C]laimant's degenerative disc disease has not been characterized by evidence of nerve root compression; spinal arachnoiditis; or lumbar spinal stenosis, as required by Section 1.04 of the Listings.

The Court finds two flaws in ALJ Cavadi's determination. First, ALJ Cavadi fails to explain how Ms. Johnson's "severe impairment[]" involving both of Ms. Johnson's wrists did not literally or equivalently meet Listing 1.02. *See* 20 C.F.R. § 404.1526(b). Listing 1.02 provides as follows:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1. Having cited Listing 1.02, ALJ Cavadi simply concludes that Ms. Johnson's impairment does not qualify without any supporting explanation as to how or why her impairment doesn't qualify. This is insufficient. *See Burnett*, 220 F.3d at 119 (requiring the ALJ to "set forth the reasons for his decision" relating to step three); *Cf. Cadillac v. Barnhart*, 84 F. App'x 163, 167 (3d Cir. 2003) (affirming, in relevant part, the ALJ's step

three determination where the ALJ "explained why she rejected a match between [the claimant's] medical evidence and the individual relevant listings").

Second, ALJ Cavadi fails to explain why the *combination* of Ms. Johnson's severe impairments is not medically equivalent to any of the Listings in Index 1. *See* 20 C.F.R. § 404.1526(b). Having determined that Ms. Johnson has two severe impairments, ALJ Cavadi was required to determine whether the "cumulative effect" of these impairments medically equaled any Listing in Appendix 1. *See Cadillac*, 84 F. App'x at 167.

Here, ALJ Cavadi concludes that "the [C]laimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 22). But ALJ Cavadi failed to explain how or why the combination of Ms. Johnson's impairments is not equivalent to one of the Listings in Appendix 1. This too is insufficient. *See Burnett*, 220 F.3d at 119; *see also Jones*, 2012 WL 5451528, at *6 (finding improper a conclusory statement that a combination of the claimant's impairments did not medically equal any Listing).

The Commissioner, however, argues that, Ms. Johnson "does not identify any particular Listing these combined impairments would equal." (Def. Br. at 9). The Commissioner also asserts that "no medical source in the record opined that the combination of [Claimant's] impairments met a Listing, or that those impairments in combination caused any additional limitations." (*Id.*). The Commissioner concludes that Ms. Johnson "has therefore failed to establish that her combined impairments equaled a Listing." (*Id.*).

But the Court cannot accept the Commissioner's arguments, made on appeal, in lieu of ALJ Cavadi providing an explanation or analysis as to why a combination of Ms. Johnson's two severe impairments does not medically equal any Listing. Rather, it is this Court's task to review

ALJ Cavadi's decision on appeal. *See Burnett*, 220 F.3d at 119-120. And the Court cannot perform its task where no reasons are given for the ALJ's conclusion that "the [C]laimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *See Torres*, 279 F. App'x at 152.

Accordingly, the Court must vacate ALJ Cavadi's order and remand to the ALJ for an explanation and analysis as to (1) whether Ms. Johnson's "Madelung's deformity of both wrists" meets or equals Listing 1.02; and (2) whether Ms. Johnson's severe impairments, in combination, medically equal any Listing in Appendix 1. *See* 20 C.F.R. § 404.1526(b).

Finally, the Court disappointingly observes that Ms. Johnson has been seeking disability insurance benefits for over two decades. And, quite regrettably, the Court is still unable to reach a final resolution and must agree with Ms. Johnson that "the matter must be remanded for a proper step three analysis." (Cl. Br. at 24). Given the duration of this process, the Court strongly urges the Commissioner to promptly reach a determination in accordance with this Opinion.

## V. Conclusion

For the foregoing reasons, ALJ Cavadi's decision is hereby vacated and this case is remanded for further proceedings consistent with this Opinion. An appropriate order shall accompany this Opinion.

s/*Esther Salas*  
**Esther Salas, U.S.D.J.**